IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT MARTINEZ PEREZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:03-CV-1073-L |
| DOUGLAS DRETKE, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Robert Martinez Perez, by and through his counsel of record, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.§ 2254. For the reasons stated herein, the application is **denied**.

**I. Factual and Procedural Background**

Petitioner Robert Martinez Perez ("Petitioner") was indicted on charges of capital murder for the 1994 murders of Jose Travieso and Robert Rivas, members of a San Antonio, Texas street gang called the Mexican Mafia. Petitioner was convicted of capital murder, and sentenced to death on May 21, 1999, in the 144th Judicial District Court of Bexar County, Texas. His conviction and sentence were affirmed on direct appeal. *Perez v. State*, No. 73,457 (Tex. Crim. App. Sept. 19, 2001). Petitioner also filed an application for state post-conviction relief during the pendency of his appeal. The application was denied in an unpublished order. *Ex parte Perez*, Writ No. 55,333-01 (Tex. Crim. App. April 30, 2003). Petitioner then filed this action in federal court.

## II. Issues Presented

In two grounds for relief, petitioner contends that he was denied due process of law when the trial court: (1) allowed the state to introduce cumulative, inadmissible extraneous offense evidence; and (2) permitted a plainclothes officer to stand near two prosecution witnesses in plain view of the jury.

## III. Standard of Review

The standard of review in federal habeas proceedings is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2005). This statute applies to all federal habeas corpus petitions filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Section 2254(d)(1) concerns pure questions of law as well as mixed questions of law and fact. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). With respect to the "unreasonable

**Memorandum Opinion and Order – Page 2**

application" clause, a federal court may grant the writ of habeas corpus if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004). Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins*, 539 U.S. at 520 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). In order for a federal court to find the state court's application of Supreme Court precedent "unreasonable," the state court decision must be more than incorrect or erroneous--the application of clearly established federal law must have been "objectively unreasonable." *Id.* at 520-21 (citing *Williams*, 529 U.S. at 409); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001). Under § 2254(d)(2), a federal court must give deference to state court findings unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.) (as modified on denial of rehearing), *cert. denied*, 531 U.S. 1002 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### IV. Extraneous Offense Evidence

Petitioner first complains that the trial court allowed the state to present evidence about a street gang known as the "San Antonio Mexican Mafia," including evidence of disputes within the

organization and criminal acts perpetrated by gang members. According to petitioner, none of these extraneous matters was connected to him and should have been excluded from his trial.

### A. Applicable Law

The First Amendment to the United States Constitution protects an individual's rights to join groups and associate with others holding similar beliefs. *See Dawson v. Delaware*, 503 U.S. 159, 163 (1992). The Constitution, however, does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations simply because those beliefs and associations are protected. *See id.* at 165. In cases involving gang membership, the admission of such evidence is constitutional error only where the membership is prejudicial and not relevant to any of the issues being decided. *Id.* at 164-67; *see also Fuller v. Johnson*, 114 F.3d 491, 497-98 (5th Cir.), *cert. denied*, 522 U.S. 963 (1997).

### B. Discussion

Petitioner cites seven pieces of evidence that he believes should not have been admitted by the trial court because they were not connected to him "in any way." *See* Hab. Pet. at 6-7. To the extent petitioner relies on the "cumulative error" doctrine, his claim is without merit. The Fifth Circuit has held that:

> [F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992), *cert. denied*, 508 U.S. 960 (1993) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The *Derden* court, however, also recognized that the "cumulative error" doctrine was not clearly established under existing Supreme Court precedent.

**Memorandum Opinion and Order – Page 4**

*Id.* at 1456 ("That the constitutionality of a state criminal trial can be compromised by a series of events none of which individually violated a defendant's constitutional rights seems a difficult theoretical proposition and is one to which the Supreme Court has not directly spoken."). Under the AEDPA, a federal court may grant habeas relief only with respect to a state court adjudication which results in a decision that is contrary to or involves an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.[1] 28 U.S.C. § 2254(d)(1). Because the "cumulative error" doctrine has not been clearly established by the Supreme Court, habeas relief is not available to petitioner under that doctrine.

In addition, petitioner cannot obtain federal habeas relief merely because this evidence is irrelevant or is more prejudicial than probative. As the Fifth Circuit stated in *Fuller*:

> The issue in this case is not whether the Aryan Brotherhood evidence was relevant to Fuller's future dangerousness in the sentencing phase, nor whether the evidence was more probative than prejudicial. Those are not constitutional issues but evidentiary issues, properly considered under the Texas Rules of Criminal Evidence on direct appeal. The fact that irrelevant evidence may have been admitted at trial does not rise to constitutional error. *Romano v. Oklahoma,* 512 U.S. 1, 10- 12, 114 S.Ct. 2004, 2011, 129 L.Ed.2d 1 (1994). The jurisdiction of this court on habeas review of a state prosecution is limited to constitutional issues under 28 U.S.C. § 2254(d)(1), as amended by the AEDPA.

*Fuller*, 114 F.3d at 498.

The only colorable constitutional argument raised by petitioner with respect to this claim is that the admission of his gang membership violated his First Amendment right to freedom of association. In order to prevail on this claim, petitioner must prove that such membership is prejudicial and not relevant to any of the issues being decided. *Dawson*, 503 U.S. at 164-67. Petitioner cannot meet this heavy burden. The evidence admitted at trial showed that petitioner's

---

[1] The AEDPA standard of review is similar, but not identical, to the defense of non-retroactivity set forth in *Teague v. Lane*, 489 U.S. 288 (1989).

**Memorandum Opinion and Order – Page 5**

membership in the San Antonio Mexican Mafia formed the motive and reason for the underlying murders. More particularly, this evidence consisted of: (1) testimony concerning the organization and operation of the San Antonio Mexican Mafia;[2] (2) correspondence between members of the organization, including a prosecution witness and petitioner, regarding schisms, killings and criminal conduct by the organization;[3] and (3) testimony by a San Antonio police detective regarding the large number of homicides attributed to the organization.[4] Such evidence supports the state's theory that petitioner killed the two victims to succeed in a power struggle within the San Antonio Mexican Mafia by establishing that: (1) petitioner was a leader in the organization; (2) there was a dangerous power struggle within the organization at the time of the killings; (3) the victims were on the opposite side of that power struggle; (4) the organization's rules required petitioner to carry out the murders; and (5) the victims were killed because of the power struggle. In reviewing this evidence, the Texas Court of Criminal Appeals stated that the record "overwhelmingly demonstrated that the murders resulted from the rift within the mafia, an organization notorious for committing homicides, and in accordance with provisions of the Mexican Mafia's constitution." *Perez*, No. 73,457, slip op. at 8. Petitioner has failed to demonstrate that this decision is unreasonable in light of the evidence presented at trial.

Because each item of disputed evidence was relevant to the issues being decided, the admission of such evidence did not violate petitioner's First Amendment right to freedom of association. Thus, there is no constitutional error.

---

[2] Hab. Pet. at 6; 26 RR 5-9, 48-55, 55-65; St. Exh. 350; *Perez*, No. 73,457, slip op. at 3.

[3] Hab. Pet. at 7; 26 RR 70-81, 98-102; St. Exhs. 257, 257A, 259, 259A, 260, 260A; *Perez,* No. 73,457, slip. op. at 7.

[4] Hab. Pet. at 7; 26 RR 143-49; *Perez*, No. 73,457, slip op. at 3.

## V. Courtroom Security

In his second claim, petitioner contends that the presence of a plainclothes officer near the witness stand during the testimony of Jesse "Chuy" Torres and Frank Esparza violated his right to due process.[5]

### A. Applicable Law

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *accord Chavez v. Cockrell*, 310 F.3d 805, 808 (5th Cir. 2002), *cert. denied*, 538 U.S. 915 (2003). As the Supreme Court and the Fifth Circuit have recognized, "[t]he physical appearance of a defendant while in the presence of the jury may adversely affect the presumption of innocence." *Chavez*, 310 F.3d at 808 (citing *Estelle*, 425 U.S. at 504) (noting that a defendant's appearance before a jury may "affect a juror's judgment" because prison clothing serves as a "constant reminder of the accused's condition"). Therefore, certain security practices such as shackling an accused before a jury "pose such a threat to the 'fairness of the factfinding process' that they must be subjected to 'close judicial scrutiny.'" *Holbrook v. Flynn,* 475 U.S. 560, 568 (1986) (quoting *Estelle*, 425 U.S. at 503-04). Extreme security measures, however, may be justified upon balancing these concerns with the court's "obligation to 'protect the court and its processes, and to attend to the safety and security of those in the courtroom.'" *Chavez,* 310 F.3d at 808-09 (quoting *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir. 1988)).

---

[5] The state court record does not support petitioner's assertion that the officer was present during the testimony of a Frank "Esparza." Instead, the record shows only that the officer was present during the testimony of Jesus "Jessie" Travieso. *See* 28 RR at 81-82. On direct appeal, the Texas Court of Criminal Appeals surmised the petitioner probably meant to refer to Frank Estrada, although "the record does not clarify whether [the officer] sat through Estrada's testimony, Travieso's testimony, or both of their testimonies." *Perez,* No. 73,457, slip op. at 13. Respondent makes no complaint regarding any misidentification other than to suggest the correct name of the witness. Resp. Ans. at 16 n.14.

**Memorandum Opinion and Order – Page 7**

By contrast, the use of security personnel is more freely permitted. Even the conspicuous deployment of security guards in a courtroom is not the sort of inherently prejudicial practice that should be permitted only when justified by an essential state interest specific to each trial. *See Holbrook*, 475 U.S. at 568-69. Instead, the question is whether the presence of security personnel was so inherently prejudicial that the accused was thereby denied his constitutional right to a fair trial. *Id.* at 570. As the Supreme Court stated in *Holbrook*:

> The chief feature that distinguishes the use of identifiable security officers from courtroom practices we might find inherently prejudicial is the wider range of inferences that a juror might reasonably draw from the officers' presence. While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm.

*Id.* at 569; *see also Nicholson*, 846 F.2d at 279 (holding that the presence of three plainclothes deputies, including one who sat next to defendant, was warranted and not unduly prejudicial to the accused).

### B. Discussion

The record shows that Jesse "Chuy" Torres and Frank Esparza were under the protection of the United States Marshal's witness protection program when they testified at trial. *See* 26 RR at 82-89; 28 RR at 80-82. John Josey, a plainclothes officer, stood by the witness stand during their testimony. Josey's weapon was not visible, and he wore nothing to distinguish himself from any other civilian in the courtroom. *See* 26 RR at 84-87; 28 RR at 81-82; *see also Perez*, No. 73,457, slip op. at 14-15. Josey testified outside the presence of the jury that it was the policy of the United States Marshal Service to provide security to a witness under protection and to sit close to the witness, especially if there are defendants in custody or an audience in the courtroom. *See* 26 RR at 85, 88-89; 28 RR at 81-82.

Even if the jury was able to discern that Josey was present to provide security for Torres and Esparza, no unfairness has been shown. In fact, the presence of the extra security could be consistent with factors unrelated to any danger posed by petitioner. *See Holbrook*, 475 U.S. at 569. The critical inquiry does not focus on the jurors' consciousness of a prejudicial effect, but whether "an unacceptable risk is presented of impermissible factors coming into play." *Id.* at 570. The trial court conducted the proper inquiry outside the presence of the jury and its actions appear warranted by the circumstances reflected in the state court record.

Petitioner has failed to demonstrate that the presence of a plainclothes officer during the testimony of Torres and Esparza was so inherently prejudicial that he was denied his constitutional right to a fair trial. This ground for relief is overruled.

### VI. Conclusion

Based on the foregoing, Petitioner's Petition for Writ of Habeas Corpus is **denied**.

**It is so ordered** this 24th day of June, 2005.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 10**